## LUTHER ADAMS *vs.* INHABITANTS OF NATICK.

The location of a railroad track near a highway will not make it the duty of the town to build a fence in order to prevent animals that may be frightened by the cars from escaping into the adjoining fields, although such occurrences may be probable; but the question of the necessity of a fence, in order to render a highway safe and convenient for travellers, is to be determined irrespective of the consideration of the proximity of the railroad track.

WELLS, J. This cause comes up by exceptions to the instructions given to the jury at the trial in the superior court, and a report of all the evidence bearing upon the questions raised. The report states it to be " an action to recover from the defendants the value of a horse which was drowned, and other damages incurred, by reason of the horse being frightened by railroad cars, and escaping from the highway on account of the want of a suitable railing thereon."

The declaration alleges that the highway in question runs " along the side of and quite near to the Boston and Worcester Railroad on the one hand, and a pond or lake on the other;" " which way is not safe, but wholly unsafe for such travel without a suitable guard or fence along either side thereof, at such place." It further alleges that the defendants " negligently suffered the said highway to be and remain, at and near such place, without such guard or fence, and thereby unsafe for public travel." It then alleges, (averring due care,) that the plaintiff's horse " being reasonably safe to drive, but becoming frightened at the near approach of said railroad cars at such unguarded place, the plaintiff was thrown out of said wagon and hurt, and his wagon and harness broken and damaged, and the plaintiff's horse went out of said highway into said lake and was drowned."

From the evidence reported it appears that the plaintiff's horse, being frightened, turned, at first facing the cars, then making a complete circuit, crossed his own track and went out of the road, on the side farthest from the railroad track, through a gap in the fence or railing, and ran some ten or twelve rods

along a cart path in the adjoining field, and then plunged into the lake and was drowned. The wagon was not upset, but the plaintiff was thrown out. Whether he was thrown out by the turning of the horse in the road, or in passing off from the road, was in dispute, and the evidence is not decisive upon that point. But under the instructions of the court the verdict of the jury must be taken to have settled that question in favor of the plaintiff's position, namely, that he was thrown out of the wagon and lost his control over the horse at the time when the horse left the highway.

The defendants' counsel asked for the following instructions, among others: 1. "That there is no evidence that the injuries, for which the plaintiff seeks to recover, were caused by reason of any defect in the highway, or by reason of any want of a sufficient railing." 2. "That the evidence is insufficient, in law, to support a verdict for the plaintiff."

The court declined to instruct the jury as requested; but gave instructions, the substantial parts of which, so far as they relate to the question of the defect in the highway, are here given, as follows :

"The only defect alleged is a want of railing, and this is a defect for which the town may be liable, if it be necessary to make the road reasonably safe to travel; and it is for the jury to say on the evidence whether such a railing was necessary to make the highway safe at the place of the accident."

"If by the combined effect of the fright of the horse and of a defect in the road, the horse was killed without the intervention of any time between the time when the plaintiff had control of his horse and the time when the horse went out of the highway; and if the want of a railing was the cause of the plaintiff's loss of control over his horse; and if the want of a railing caused the horse to go out of the highway; and if that want was a defect and the cause of the horse's death; then the plaintiff can recover."

"If there was no negligence after the horse left the highway and if no other cause intervened to bring about or contribute to

the death of the horse, then, if a defect in the highway (without any fault on the plaintiff's part) was the cause of the horse being out of the limits of the highway, and if his being out of those limits was the sole cause of his death, the plaintiff is entitled to recover."

It seems to us that these instructions would authorize the jury to find that the absence of a railing or fence along the sides of a highway was a defect, upon the sole consideration that, owing to the close proximity of the railroad track, such a railing or fence was necessary to prevent horses, frightened by the cars, from escaping out of the highway into the adjoining fields. This appears to be the theory upon which the plaintiff's declaration is framed. But such is not the law. Towns are not required to fence their roads with a view to prevent frightened animals from escaping out of the limits of the highway, even when the near location of a railroad may render such occurrences probable. Neither are they bound so to construct their roads that a horse, frightened by any cause, and rushing out of the track which is wrought for travel, will not expose himself nor the carriage and its occupants to injury from the embankments, gutters, or other obstructions upon the sides of the road, either within or without the limits of the highway. From the necessity of the case, by the forming of the road-bed, and the grading and draining necessary for its proper construction, the sides of the road will unavoidably be put into a condition which is unsuited to the rapid passage of horse and carriage transversely.

But towns are not therefore required to guard against such occurrences by fencing up the road-bed, so as to prevent escape therefrom. They are bound to provide suitable railings against precipices, excavations, steep banks, deep water, &c., within or without the limits of the road, if they are so imminent to the line of public travel as to expose travellers to unusual hazard. It is difficult to define the extent of this obligation by any general proposition. Whether or not such a railing is necessary for the reasonable security of the public is a question which depends very much upon the circumstances of the particular locality, in reference to which the question arises. But

the essential and invariable term, or element, in all cases where a railing is required, is some dangerous object or place outside of the required railing, in or upon which the traveller may come to harm, if not warned or detained therefrom by the railing. The liability of horses to fright from the passage of railway trains near by may render more imperative the necessity and the duty of maintaining a railing, wherever there is occasion for a railing. But whether the absence of a railing is a defect, and the neglect to maintain one a breach of duty which will render a town liable, must be determined by the character of the place or object, between which and the travelled road it is claimed that the barrier should be interposed.

Although it was properly left to the jury to determine whether the want of a railing at the place of the accident was a defect, yet this was done under instructions that omit any explanation of the conditions which would make such a railing necessary and the want of it a defect, and which might naturally be understood to indicate — though probably not so intended — that if they should think a railing necessary to prevent horses from going out of the highway when frightened by the cars, they might hold the town liable for the loss, on the ground merely of the want of such railing, and without any other consideration.

But further than this, it appears to us that there was no evidence from which a jury could properly find that a railing was necessary at the place of the accident, or the town in fault for omitting to erect and maintain one there. The roadside had no high bank, the whole descent from the top of the road-bed being only from two and a half to three feet in a distance of about a rod, and no part of that descent abrupt. A path, made and used for carting gravel, entered the highway at right angles, or nearly so. The horse went out of the highway upon this cart path, and followed it for some distance. The shore of the lake also turned, and lay nearly parallel with the cart path. When the lake was full, the water came up within six or eight feet of the opening in the railing through which the horse went out. But it was very shallow near that point, as it was along

the side of the cart path, so that when the water was low, having fallen about three feet at the time of the surveys for the plans produced, the water receded to a distance of some six or eight rods from the same opening. We think that neither the bank formed by the side of the road, nor the vicinity of the shallow margin of this lake, were of so dangerous a character as to require the town to maintain a railing across the opening at the point complained of, nor to render the town liable for the accident. *Stickney* v. *Salem*, 3 Allen, 374. *Sparhawk* v. *Salem*, 1 Allen, 30.

But although this seems to be the necessary conclusion upon the evidence, as it is now presented to us, yet we cannot decide it finally upon these exceptions, and it is possible that upon another trial the case may be made to bear a different aspect in these particulars. The instructions of the court, under which a verdict has been rendered against the town, appearing to us not to be adapted to the foregoing views of the law, the verdict must be set aside and a new trial granted.

*Exceptions sustained.*

*J. W. Bacon*, for the defendants.
*S. J. Thomas*, for the plaintiff.