SAMUEL BRYANT, as Administrator, etc., Respondent, *v.* THE TOWN OF RANDOLPH, Appellant.

An individual who sustains an injury because of the misfeasance or nonfeasance of a public officer, has a cause of action against such officer.

Under the act of 1881 (Chap. 700, Laws of 1881), which imposes upon the several towns of the state liability for any damages to persons or property by reason of defective highways in cases in which the highway commissioners would have been liable, the liability of a town is commensurate with that of its highway commissioners before the passage of said act, and while the duty of reparation still rests upon the commissioners the civil liability for injury to persons or property from neglect to perform his duty is transferred to the town.

Prior to that act such commissioners were liable to a person injured because of a defective highway within his jurisdiction which he, having adequate funds for the purpose, furnished by the town, negligently omitted to repair.

*Bartlett* v. *Crozier* (17 Johns. 440); *West* v. *Village of Brockport* (16 N. Y. 161), disapproved.

The provision of the General Railroad Act (Subd. 5, § 28, chap. 140, Laws of 1850), imposing upon a railroad company, which constructs its line across a highway, the duty to restore the same "to its former state or to such state as not unnecessarily to impair its usefulness," does not relieve

commissioners of highways from the care and control of those parts of public highways constituting approaches to railroad crossings, although constructed by the railroad company in discharge of its statutory duty. *It seems* that under the act of 1855 (Chap. 255, Laws of 1855), enlarging the powers and duties of highway commissioners, a highway commissioner may institute proceedings to compel a railroad company to fully perform this duty, or when it is in default he may proceed and do the necessary work and maintain an action against the company for the expense.

Negligence on the part of a commissioner of highways may consist as well in the omission to erect barriers in dangerous places at the side of a highway as in leaving the bed of the highway defective.

In an action against a town to recover damages for the death of B., plaintiff's intestate, alleged to have been caused by the negligent omission of its highway commissioners to put guards along an embankment constructed by a railroad company whose road crossed the highway, to raise the highway to the grade of the railroad, it appeared that the top of the embankment was narrow and curving, so that it was unsafe and dangerous to persons traveling with loaded wagons upon the highway, and that there were no guards or barriers along the sides; that B. was driving a loaded wagon along the highway and at a point where the traveled track ran near the edge of the embankment it gave way, the wagon was overturned and B. was killed. It was conceded that defendant's commissioner of highways had sufficient funds in his hands to make any reparation required. *Held,* that a verdict against defendant was properly rendered.

(Argued March 17, 1892; decided April 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of June, 1891, which affirmed a judgment in favor of defendant, entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages occasioned by the death of George A. Bryant by the overturning of a wagon loaded with bark, on a public highway in the town of Randolph, on the 23d day of September, 1887.

The deceased was a young man nineteen years of age, and on the morning of the day mentioned he started two miles south of the place where the New York, Pennsylvania and Ohio Railroad crosses the intersection of two public highways in the town, with a team and wagon loaded with hemlock bark,

to go to the village of East Randolph, which lies about two miles north of the railroad. The railroad was constructed in 1860, and crossed the two highways about twelve feet above their original grade. This rendered necessary the raising of the surface of each of the highways as they approached the crossing, both on the north and south, so as to enable travelers to cross the track of the railroad. The railroad company thereupon constructed embankments in the highway on each side of the crossing, 12 feet high at the intersection of the highways and the crossing, and descending northerly and southerly from thence until the original grade of the highways was reached. The embankments from a point a few feet from the crossing were 11 to 12 feet wide, and travel was practically confined to the space on the top of the embankments. The sides were left unguarded by any railing or other barrier. Owing to the angles at which the highways approached the crossing, a person driving from the south approached the crossing on a curve to the left, and on reaching the crossing was required to make a curve to the right, and then another curve to the left, in order to follow the road to East Randolph.

The intestate reached the crossing on his way north, and after passing over the crossing drove so near the edge of the embankment that the right hind wheel of the wagon commenced to cut down into the loose gravel on the west side, and finally the wagon overturned and the intestate received the injury of which he died. The intestate was seated on the top of his load on the right hand side, just forward of the right hand wheel of the wagon, holding the reins, and in reach of a brake connected with the axle of the wagon, in which position he could see the top of the horses' ears, but not their bodies. It appears that drivers sometimes sat in the position occupied by the intestate, and sometimes near the front wheel, in which case they would operate the brake by means of a rope attached to the lever, and a loop in which the foot was placed. It was shown that the intestate was a careful driver, acquainted with the management of horses; that he was familiar with the road, and that the team he drove was steady

and manageable. The traveled part of the embankment was firm six to eighteen inches from the edge on the west side. It had rained from twenty-four to thirty-six hours before the accident, and it may be inferred that the side of the embankment was softened by the rain. Maps were introduced showing the course of the wagon after it passed the crossing, as indicated by the tracks made by the wheels, and from which it appeared, as claimed by the plaintiff, that the horses were properly in the track, and that the wheels on the near side of the wagon both commenced to cut down in the beaten track, and that the front wheels remained in their proper position until by the cutting down of the hind wheel more and more, the front wheels were drawn over and the wagon overturned.

The claim to charge the town of Randolph is based upon the alleged negligence of the commissioner of highways in omitting to observe due care in protecting the embankment by a railing or barrier, or otherwise, so as to render it safe for public travel. It was also claimed that, in 1886, the commissioner of highways, in attempting to improve the road, had rendered it more dangerous than it was before. The embankments had continued as they were constructed in 1860 until 1866. It is not seriously questioned that the crossing was difficult and dangerous for loaded teams by reason of the curves and the narrowness of the embankments.

The plaintiff's counsel offered to prove that in repeated instances prior to the accident in question, accidents had occurred to travelers and teams from the condition of the highway at this point, but the proof was excluded on the defendant's objection.

It was conceded that the commissioner of highways had sufficient funds to make any reparation required.

*William H. Henderson* for appellant. It does not appear that the plaintiff's intestate was free from negligence. (*Ireland v. O., etc., P. R. Co.,* 13 N. Y. 531; *Cordell v. N. Y. C. & H. R. R. R. Co.,* 75 id. 330; *Harte v. H. R. B. Co.,* 84 id.

56; *Becht* v. *Corbin*, 92 id. 658; *Searles* v. *R. R. Co.*, 101 id. 661; *Donnelly* v. *D. C. R. Co.*, 109 id. 16; *Hale* v. *Smith*, 78 id. 480, 484; *Tolman* v. *R. R. Co.*, 98 id. 198.) Plaintiff's intestate was actually negligent, and such negligence was the direct cause of the injury complained of. (*Norris* v. *Kohler*, 41 N. Y. 42, 46; *Baker* v. *Savage*, 45 id. 191; *Connelly* v. *R. R. Co.*, 88 id. 346; *Gray* v. *S. A. R. R. Co.*, 65 id. 561; *Wendell* v. *R. R. Co.*, 91 id. 420; *Dubois* v. *City of Kingston*, 102 id. 219; *Durkin* v. *City of Troy*, 61 Barb. 437; *Reynolds* v. *R. R. Co.*, 58 N. Y. 248; *Tolman* v. *R. R. Co.*, 98 id. 198; *Bunn* v. *D., L. & W. R. R. Co.*, 6 Hun, 303.) The court erred in refusing to nonsuit upon the ground that the evidence does not show neglect of official duty on the part of the highway commissioner; that it appeared affirmatively that the place where the accident occurred was upon the railroad crossing, and that it was not the duty of the highway commissioner to keep the railroad crossing in repair, but it was the duty of the railroad company. (*Post* v. *W. S. R. R. Co.*, 123 N. Y. 589, 590; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 id. 302, 306; *Masterson* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 247; *Robinson* v. *N. Y. & E. R. R. Co.*, 27 Barb. 512; *Hunt* v. *Mayor, etc.*, 109 N. Y. 134; *Roe* v. *Elmindorf*, 52 How. Pr. 232; *White* v. *City of Quincy*, 94 Mass. 430; *Rouse* v. *City of Summerville*, 130 id. 361; *Scanlan* v. *City of Boston*, 140 id. 84; *Flanders* v. *Norwood*, 141 id. 17; *Riley* v. *Town of Greenburg*, 21 N. Y. S. R. 434; *Carpenter* v. *City of Cohoes*, 81 N. Y. 21; Laws of 1850, chap. 140, § 28; Laws of 1855, chap. 255; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Monk* v. *Town of New Utrecht*, 104 id. 552.) If plaintiff's intestate did not, in passing across the railroad track and along roadway 1, make a vigilant use of his eyes in seeing and knowing the position of his team upon the roadway, and if he did not use active care in knowing the position of his team and in guiding them, then he was negligent *per se*. (*Bunn* v. *D., L. & W. R. R. Co.*, 6 Hun, 303; *Wilbur* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 451.) The question for the jury to determine was whether the commissioner wilfully,

intentionally and culpably neglected his duties. (*Hunt* v. *Mayor*, etc., 109 N. Y. 134.)

*Frank W. Stevens* for respondent. There was evidence tending to show negligence on the part of the highway commissioner. (*Maxim* v. *Town of Champion*, 50 Hun, 88; 119 N. Y. 626; *Urquhart* v. *City of Ogdensburg*, 91 id. 67; *Monk* v. *Town of New Utrecht*, 104 id. 552; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 id. 198; *Hart* v. *H. R. B. Co.*, 80 id. 622; *Glasier* v. *Town of Hebron*, 41 N. Y. S. R. 750.) The court correctly submitted the case to the jury upon the theory that the highway commissioner had a duty to discharge with respect to the piece of road in question, and that if he was wanting in the discharge of that duty it was negligence upon his part. (*Tierney* v. *City of Troy*, 41 Hun, 120; *Wilson* v. *City of Watertown*, 3 id. 508; *People* v. *City of Brooklyn*, 65 id. 349; *Davis* v. *Leominster*, 1 Allen, 185; *State* v. *Gorham* 37 Me. 451; S. & R. on Neg. [4th ed.] § 357.)

ANDREWS, J. The act of 1881 (Chap. 700) imposes upon the several towns of the state liability for any damages occasioned to persons or property by reason of defective highways in cases where theretofore the commissioner of highways of the town would have been liable. The general highway statute places upon the highway commissioner the "care and superintendence of the highways and bridges" in his town. (1 Rev. St. 501, § 1.) It is the established rule in this state that where an individual sustains an injury by misfeasance or nonfeasance of a public officer, who acts contrary to, or omits to act in accordance with, his duty, an action lies against such officer in behalf of the party injured. (BRONSON, J., *Adsit* v. *Brady*, 4 Hill, 630.) In accordance with this principle, prior to the act of 1881, commissioners of highways were held liable to a person injured from a defective highway within his jurisdiction, which he had negligently omitted to repair, provided he had adequate funds furnished by the town, with which he could have made the necessary reparation. (*Robinson* v.

*Chamberlain*, 34 N. Y. 389; *Hover* v. *Barkhoff*, 44 id. 113; *People ex rel.* v. *Town Auditors*, 74 id. 310.) The opposite view taken in the opinion of the court in *Bartlett* v. *Crozier* (17 Johns. 440), and in *West* v. *Village of Brockport* (16 N. Y. 161), and in some of the New England states, has not been followed.

Under the statute of 1881 the liability of a town is commensurate with that of a commissioner of highways before the act was passed, and while the duty of reparation rests upon the commissioner of highways since the passage of the act, as before, the civil liability for injury to persons or property from his neglect to perform the duty, is imposed upon the town, and it becomes liable to respond in damages wherever before the statute the commissioner would have been liable. In this case the jury have found that the approaches to the railroad crossing were unsafe and dangerous, and their finding is justified by the evidence. The embankment confined travel to the narrow roadway on the surface, and the evidence tends to show that the lines of approach to the railroad track along the embankment were such that travelers incurred great hazard, especially with loaded wagons, of driving too near the edge of the embankment and being precipitated over the side into the depression below. The embankments were constructed by the railroad company in 1860, within the lines of the existing highways. The sides were left unguarded by any fence or barrier, and this condition continued until after the accident in question. We do not understand it to be controverted that if these approaches remained a part of the highways of the town of Randolph, over which the commissioner of highways had, and was bound to exercise, the same jurisdiction as over other parts of the highways in the town, a case of negligence on the part of the commissioner was established, which, in the absence of contributory negligence on the part of the deceased, gave a right of action against the town under the act of 1880. Negligence on the part of a commissioner of highways may consist as well in the omission to erect barriers in dangerous places in a highway as in leaving a bed of the highway defect-

ive. (*Ivory* v. *Town of Deerpark*, 116 N. Y. 476; Dillon on Mun. Corp. § 1005 and cases cited.)

But it is contended on behalf of the town that no responsibility rested upon the commissioner of highways as to the condition of the embankments, for the reason that they were part of the railroad crossing and made necessary to adapt the highways to the grade of the railroad, and were constructed by the railroad in performance of the statutory duty imposed upon a railroad company which constructs its line across a highway, to restore the same "to its former state or to such state as not unnecessarily to impair its usefulness." (Laws of 1850, chap. 140, § 28, subd. 5.) This duty is, as is properly contended, a continuing duty, and it is insisted that the effect of the statute is to withdraw from the jurisdiction of the commissioner of highways such portions of the highways of the town as form a part of a railroad crossing, and to place the duty of repair exclusively upon the railroad corporation. This claim is, we think, unsound. The Railroad Statute confers a privilege upon railroad companies and imposes a duty. It permits them to locate their lines across highways, but it couples the privilege with the duty of restoration. For the failure to perform the duty there is a public remedy by indictment, or by mandamus, or other action, at the instance of the highway commissioners of the town, under chapter 255 of the Laws of 1855, and a private remedy also in behalf of a person injured. (*People ex rel. Green* v. *D. & C. R. R. Co.*, 58 N. Y. 153; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 id. 302; *Masterson* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 247; *McMahon* v. *S. A. R. R. Co.*, 75 id. 231.)

But we perceive no ground for maintaining that the duty imposed by the statute of 1850 upon railroad corporations relieves commissioners of highways from the care and control of those parts of public highways constituting approaches to railroad crossings, although constructed by the railroad company as part of its statutory duty. The object of the statute of 1850 was two-fold, to legalize the crossing of highways by railroads, and to impose upon the railroad company crossing a

highway the burden and expense of restoration.    But the original highway, when its route is not changed, remains a public highway as before.    The railroad company has the right, in the first instance, to determine the place of crossing and the manner of restoration.    But as was said in *People ex rel. Green* (*supra*), the discretion reposed in the railroad company is ministerial and not judicial.    The commissioner of highways is not deprived of his jurisdiction, and under the statute of 1855, may institute proceedings to compel the company to fully perform its duty, or he may, as it seems, where the company is in default, proceed and do the necessary work and maintain an action against the company for the expense. There is no express statute depriving a commissioner of highways of jurisdiction over parts of highways which a railroad company may adapt for approaches to crossings, and it would seem to be opposed to public policy to exempt them from his general jurisdiction and responsibility and to turn over travelers injured by defective reparations to a remedy against a private corporation.    We think the ruling at the trial upon this point was correct.

The defendant also set up the defense of contributory negligence.    We deem it unnecessary to restate the evidence bearing upon this point.    It is sufficient to say that the question upon the facts proved was for the jury.

One ground upon which contributory negligence was claimed was the position of the intestate upon the load of bark.    It was claimed that he should have sat near the front wheel, in full sight of the horses, and have operated the brake by a rope from that position.    The court allowed, under objection, a question to be put to two of plaintiff's witnesses, whether the place where the intestate sat was a proper place for a driver to be, and they answered in the affirmative.    We think these questions were improper, and that the matter was not provable by the opinion of witnesses,    But all the facts bearing upon the question were before the jury, composed presumably of men competent from judgment and experience to determine the matter upon the facts for themselves, and we think it is quite

plain from the circumstances appearing in the record, that the improper evidence allowed did not prejudice the defendant, and for that reason the error is not sufficient ground for reversing the judgment. There are some other exceptions, but the main reliance was upon the two points we have noticed, and we think none of the others require particular consideration.

The case was carefully tried, the charge was clear and impartial, and we think the judgment should be affirmed.

All concur.

Judgment affirmed.