JAMES FLANSBURG, Respondent, *v.* THE TOWN OF ELBRIDGE, Appellant.

Towns — roads and highways — general rule of liability of towns for accidents caused by defects in highways — notice of defects — duties of highway authorities.

1. A town is not responsible for the injuries sustained by a traveler consequent upon straying from the adequate and suitable roadway prepared for travel. Highway authorities are bound to maintain guard rails or barriers only to protect those traveling within the space prepared and offered for that purpose against dangers in such close proximity thereto as to make traveling on it perilous or where there are other unusual or exceptional conditions.

2. The statute places upon the commissioners of highways the care and superintendence of the highways of a town and makes it their duty to properly maintain them. The town clerk has no control of or duty in regard to them, nor is he in any sense the agent or representative of the commissioners; hence notice to him is not notice to the town.

3. Evidence of an accident which occurred upon a highway, at some time previous under dissimilar circumstances, some forty-two

feet from the point of the accident in question was improperly admitted, since it did not tend to prove that the place was dangerous at that time or ever before.

*Flansburg* v. *Town of Elbridge*, 145 App. Div. 903, reversed.

(Argued April 10, 1912; decided May 21, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 12, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The action is to recover the damages resulting from personal injuries to plaintiff by reason of the negligence of the commissioners of highways of the defendant in failing to maintain a guard wall upon the north end of a culvert within a public highway from which plaintiff's horse fell. The jury might have found as the facts most favorable to the allegations of plaintiff: The highway at the locality in question ran substantially east and west, but through several hundred feet just east of the culvert it deflected slightly toward the south. The plaintiff, driving a single horse hitched to a democrat wagon, was approaching the culvert from the east. The culvert bridged a creek, and was a stone structure surfaced with dirt. It was twenty-two feet and eight inches north and south as a part of and at right angles with the highway, and the distance from its east to its west edge was twelve feet. About twenty years prior to the accident it was reconstructed, and there was built upon each end a guard wall of stone about two feet in height and twenty-eight inches wide. Between them was a level roadway of eighteen feet. At the time of the accident, and through the two or three years last prior to it, a part of the north wall was gone by falling into the creek beneath. Its eastern three feet, approximately, were wholly gone so that the surface of the roadway at that particular place extended to the northern edge of the culvert; through the two feet, approximately, next west it was about six inches high; through the next two or three feet it was about

twelve inches high, and through the remaining part its
original condition was intact. The bed of the creek flowing
through it was, upon its north side, seven feet four inches
below the surface of the roadway upon it. The highway
was in the country, had the ordinary dirt surface and
was largely used. Its roadway or traveled part was
"turnpiked" or crowned so that it sloped either way
from its center to a shoulder or grassy bank, the height
of which is not stated, but the photographs in evidence
indicate that while apparent it did not exceed one
foot. At a point eighty-six feet east of the culvert the
width of the roadway or distance between the shoulders
was fifteen and two-tenths feet; twenty-six feet east of
the culvert it was fifteen feet, and ten feet east of the
culvert it was thirteen and one-half feet. Its northern
shoulder east of and contiguous to the culvert was a sub-
stantial distance further south than was the south side of
the north guard wall. In other words, the north guard
wall was outside to the north of the north bank or shoulder
of the roadway. The roadway was smooth, solid and in
good condition. About twenty feet north of the north
shoulder was a ditch which extended from the creek east-
erly. The surface between the north shoulder and the
ditch sloped with more or less unevenness toward the
ditch and grass; weeds and bushes were growing upon it.

The plaintiff, driving westerly at about nine o'clock in
the night of September 30, 1908, was approaching this
culvert. He had been over the road a good many times.
He alone described the accident and in these words:
"The wind was blowing awfully strong from the south;
it was awfully cloudy; and it was a fleeting rain; when
I got near this spot where I went off it was a dense
darkness. The horse made a stumble and went down on
his — as I thought on his knees; I had the lines in both
hands; he pretty nearly pulled me over the dashboard.
He most rallied from that and went down again. Then
the wagon and him and me all went. I was throwed

clear over the wagon I think." After the fall the plaintiff lay upon the north side of the ditch, twenty feet from the north shoulder of the roadway and five or six feet east of the eastern line of the culvert extended; the horse still hitched to the wagon was lying upon his side about five feet north of the culvert with his head in the creek, his feet toward the roadway, and his body extending easterly in the creek and up its east bank. The wagon, completely overturned, lay straight behind the horse, parallel with the roadway, its southern side being four feet from the north shoulder of the roadway and its hind end about twelve feet east from the easterly edge of the creek. The commissioners of highways had funds available for the restoration of the wall or any reparation required. So far as appears no accident had ever occurred upon the culvert or highway of any nature caused by the demolition of the wall and no complaint made concerning its condition.

At the close of the entire evidence the trial court denied the motion of the defendant that the plaintiff be nonsuited on the grounds that the proof failed to show negligence on the part of the commissioners of highways or of the defendant, or freedom from contributory negligence on the part of the plaintiff, and submitted the issues to the jury. Thereto the defendant excepted. The Appellate Division did not unanimously render its judgment.

*Leroy B. Williams* and *John C. McLaughlin* for appellant. The condition of the highway was not such as to charge the defendant with negligence. (*Mack* v. *Town of Shawangunk*, 98 App. Div. 577; *Patchen* v. *Town of Walton*, 17 App. Div. 158; *Young* v. *Town of Macomb*, 11 App. Div. 480; *Grant* v. *Town of Enfield*, 11 App. Div. 358; *Waller* v. *Town of Hebron*, 5 App. Div. 577; *Sutphen* v. *Town of North Hempstead*, 80 Hun, 409; *Wade* v. *Town of Worcester*, 134 App. Div. 51;

*Glasier* v. *Town of Hebron,* 131 N. Y. 447; *Hubbell* v. *City of Yonkers,* 104 N. Y. 434; *King* v. *Vil. of Fort Ann,* 180 N. Y. 496.) Evidence of a conversation by a witness with the town clerk claimed to show actual notice to the town of the alleged dangerous condition of this road was improperly received, the question being whether the commissioner of highways, not the town clerk, had notice. (*Allen* v. *Town of Allen,* 33 App. Div. 463; *Riley* v. *Town of Eastchester,* 18 App. Div. 94; *Bullock* v. *Town of Durham,* 64 Hun, 380; *Fox* v. *Vil. of Manchester,* 183 N. Y. 141; *White* v. *L. & Y. Co.,* 94 App. Div. 4; *Booth* v. *Town of Orleans,* 66 Misc. Rep. 339; *Bush* v. *Trustees of Geneva,* 3 T. & C. 409; *Town of Pierpont* v. *Loveless,* 4 Hun, 696; *Touhey* v. *City of Rochester,* 64 App. Div. 56.) It was reversible error for the court to admit evidence that a load of straw tipped over and left the road at a point forty-two feet east of this culvert in December, 1907, when the roadway was covered with sloping ice. (*Waller* v. *Town of Hebron,* 5 App. Div. 577; 130 N. Y. 673; *Brady* v. *M. Ry. Co.,* 127 N. Y. 46; *Dye* v. *D., L. & W. R. R. Co.,* 130 N. Y. 673; *Harrison* v. *N. Y. C. & H. R. R. R. Co.,* 195 N. Y. 91; *Fordham* v. *Gouverneur Village,* 160 N. Y. 541.)

*William Kennedy* for respondent. Defendant was negligent in permitting this culvert and its approaches to remain without a railing or guard wall for upwards of three years. (*Ivory* v. *Town of Deerpark,* 116 N. Y. 476; *Pelkey* v. *Town of Saranac,* 57 App. Div. 337; *Wood* v. *Town of Gilboa,* 146 N. Y. 383; 76 Hun, 175; *Maxim* v. *Town of Champion,* 119 N. Y. 626; 50 Hun, 88; *Bryant* v. *Town of Randolph,* 133 N. Y. 70.) The evidence of the witness Hooper was competent to show the necessity of a barrier at this culvert. (*Quinlan* v. *City of Utica,* 11 Hun, 217; 74 N. Y. 603.)

COLLIN, J. Under the statutes the defendant is liable to the plaintiff provided his damages came by reason of

a defect in the highway existing because of the neglect of its commissioners of highways. (Laws of 1881, chap. 700; Laws of 1890, chap. 568, sections 16, 17; Laws of 1909, chap. 30, sections 43, 74, 75.) The commissioners were under the statutory duty to care for and cause to be kept in repair the highways and bridges of the town (Laws of 1890, chap. 568, section 4), and the common law of this state gives a right of action against commissioners of highways, who act contrary to or omit to act in accordance with their duty to a person injured thereby, and this right of action it is which the statute made maintainable against the town. (*Bryant* v. *Town of Randolph*, 133 N. Y. 70; *Lane* v. *Town of Hancock*, 142 N. Y. 510.) In this case a question is: Does the evidence show or tend to show that an omission of the commissioners, inconsistent with and contrary to ordinary and reasonable foresight, apprehension and diligence, caused the injuries of the plaintiff? If it does not, the exception of the defendant to the denial of its motion for the nonsuit was well taken.

The court charged that the plaintiff could not recover unless his horse went off the culvert at the north end of it. The location of the horse, wagon and the plaintiff and the physical conditions following the accident forbid the finding or the inference that the horse passed upon the culvert from the part of the highway contiguous to the culvert and traveled and held out to the public for use. The plaintiff lay twenty feet from the north shoulder and more than twenty-six feet from the center of the roadway, and six feet east of the east edge of the culvert extended northerly. The horse and wagon were in line easterly from the north and south center line of the culvert extended, and practically parallel with the culvert and roadway. The horse stumbled while walking against or upon the north guard wall as it remained. Upon the roadway south of it there was nothing to cause it to stumble. From these facts there cannot legitimately

and reasonably be drawn the inference that the horse passed upon the culvert from the roadway, the north shoulder of which was a considerable distance from the interior line of the guard wall, and then turned at a sharp angle upon this wall.    These facts compel the clear and certain inferences that the horse strayed from the roadway upon the part north of it, at some point east of the culvert, and proceeding upon the part not prepared or intended for travel, passed from it upon that part of the culvert occupied originally by the wall, and, reaching the part of the wall still standing, stumbled, lost its balance and fell broadside, overturning the wagon with such force and velocity that the plaintiff was flung from it north to the ditch.

The commissioners of highways were not negligent in omitting to maintain a guard rail or fence upon the north boundary of the roadway.    It is a matter of common intelligence, as well as of law, that a reasonably safe condition of a highway for the travel to which it is subject is all that is practicable and that adjoining roadways fitted and intended for use are spaces in the highways unsuitable and dangerous for travel.    Highway authorities are not under the duty of obstructing travelers from straying into those spaces.    They are bound to maintain guard rails or barriers only to protect those traveling within the space prepared and offered for that purpose against dangers in such close proximity thereto as to make traveling on it perilous or where there are other unusual or exceptional conditions.    If the horse of the plaintiff had passed a few feet farther north and fallen down the bank of the creek, the defendant would not be liable because it was proceeding upon a part of the highway which had not been prepared for public travel and in so doing fell.    The actual occurrence cannot be differentiated from the assumed.    If there had been a guard rail along the inside of the wall, as it remained, to the east edge of the culvert, the accident

might have happened as it did. The town is not responsible for the injuries sustained by the plaintiff consequent upon his straying from the adequate and suitable roadway prepared for travelers. To hold that the defendant may be made liable for accidents as independent of negligence on the part of the commissioners and as unlikely and unapprehended as was this would charge them with an enlarged, unjust and harsh responsibility and risk. (*King* v. *Village of Fort Ann*, 180 N. Y. 496; *Glasier* v. *Town of Hebron*, 131 N. Y. 447; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Marshall* v. *Ipswich*, 110 Mass. 522; *Adams* v. *Inhabitants of Natick*, 95 Mass. 429; *Dougherty* v. *Village of Horseheads*, 159 N. Y. 154; *Lane* v. *Town of Hancock*, 142 N. Y. 510.)

Errors prejudicial to defendant and duly excepted to were made in the admission of certain testimony in the plaintiff's behalf under due objection by the defendant. A part of such testimony was that the witness giving it told the town clerk of the defendant about four years before the accident that the condition of the road east of the culvert was dangerous after the willow trees upon the north of the roadway with low hanging branches extending to it had been cut and there ought to be something there to protect the road. In admitting it the court said: "I will receive it simply for the purpose of showing notice." As already stated the statute placed upon the commissioners of highways the care and superintendence of the highways of the town and made it their duty to properly maintain them. The town clerk had no control of or duty in regerd to them, nor was he in any sense the agent or representative of the commissioners. His knowledge was not their knowledge and the notice to him was not notice to them. The evidence was, therefore, incompetent and irrelevant. (*Touhey* v. *City of Rochester*, 64 App. Div. 56.) A witness for the plaintiff testified, under due objection and exception, that in December, 1907, another person and himself were driving a team, hitched

to a sleigh loaded with straw, over this road which was covered with ice and very slippery and when the front end of the sleigh had reached a point forty-two feet east of the culvert the sleigh tipped over to the north. This occurrence was under conditions wholly dissimilar to those attending the injuries to the plaintiff. Proving it did not tend to prove that the condition of the place of the accident to plaintiff made it dangerous at that time or ever before. The testimony did not impart to the jury any truth which justly or with fairness to the defendant should have entered into their deliberations and its admission was error. (*Brady* v. *Manh. Ry. Co.*, 127 N. Y. 46; *Harrison* v. *N. Y. C. & H. R. R. R. Co.*, 195 N. Y. 86.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., Gray, Werner, Willard Bartlett, Hiscock and Chase, JJ., concur.

Judgment reversed, etc.