ANNIE GAYNOR, Plaintiff, *v.* TOWN OF HEMPSTEAD and Another, Defendants.

County Court, Nassau County, October 25, 1934.

*Milton Pinkus*, for the plaintiff.

*Jeremiah Wood*, for the defendant Town of Hempstead.

*Koslow & Mack*, for the defendant Smith.

JOHNSON, J.   This action is brought by the plaintiff to recover for injuries alleged to have been suffered by her as a result of a

fall which she claims was due to the defective condition of a sidewalk in the town of Hempstead. She has brought her action against the town and also against the owner of the property abutting upon the sidewalk alleged to have been defective. Her complaint charges that there was a duty imposed by law upon both defendants to maintain the street in question in a safe and proper condition for the use of pedestrians; that nevertheless for a long period of time a dangerous obstruction caused by one flagstone in the sidewalk being substantially higher than the adjoining flagstone, was permitted to exist by the defendants; that such condition was known to them or should have been known by them; and that by reason of the defendants' negligence in permitting such sidewalk to be improperly and dangerously constructed and maintained, and to remain in an unsafe and dangerous condition, and in failing to remedy it the plaintiff suffered the injury complained of.

The defendant town in its answer, in addition to denials, set up as a defense in substance that the sidewalk in question was constructed and maintained by the abutting owner without the knowledge or consent of the town; that the abutting owner caused, created and established the dangerous condition if it existed; that the town had no control over it and was without power or authority to exercise any control over it.

There are now three motions before this court upon the pleadings. The defendant abutting owner moves to dismiss the complaint as against him upon the ground that he is without liability as a matter of law. The defendant town moves to dismiss the complaint against it upon the same ground. The plaintiff makes a cross-motion as against the town to strike out the latter's affirmative defenses in its answer.

The question of the town's liability will first be discussed, as the disposition of that question will dispose both of the motion to dismiss the complaint as against the town and the plaintiff's motion to strike out the town's affirmative defenses.

The question there involved is, of course, that of the liability of a town for injuries suffered by travelers upon one of its highways and whether a sidewalk is a part of a highway within the principles of law applicable to such a liability.

Primarily, the control of highways is in the Legislature. It has usually delegated to municipal corporations the duty of maintaining highways within their corporate bounds. In the absence of a statute delegating to the town the duty of maintaining highways within its bounds, and keeping them reasonably safe for public travel, the town is not liable for injuries resulting to travelers by reason of defects in the highways. The duty of maintaining high-

ways in towns has not been delegated to the town as a municipal corporation. It was formerly delegated to the commissioners of highways of the town, and they were held individually responsible to an individual who suffered injury by reason of a defect in the highway, after notice to the commissioners of its condition and a failure to exercise reasonable diligence in repairing the same if provided with necessary funds for that purpose. Liability was first imposed upon a town for damages to person or property by reason of defective highways or bridges in 1881 by chapter 700 of the Laws of 1881, which provided that the town should be liable in cases in which the commissioners of highways were theretofore liable, and further provided that if judgment was recovered against a town due to the negligence of the commissioners of highways, the town was authorized to sue the commissioners for the amount of such judgment. This provision was continued in the Highway Law of 1890 (Laws of 1890, chap. 568, § 16). In the statutory consolidation of 1909, chapter 30 of the Laws of 1909, known as the Highway Law, repealed the statutes above referred to and by sections 40 and 47 thereof created the office of town superintendent of highways and enumerated his powers and duties, which embraced the general powers theretofore conferred upon the commissioners of highways. By section 74 of the Highway Law the liability of a town for damages to person or property for any defect in the highway due to the negligence of the town superintendent was continued in practically the same language formerly used as to commissioners of highways, and by section 75 of the Highway Law the town was given a right of action against the town superintendent in cases where the town was obliged to pay a judgment obtained against it due to the neglect of the town superintendent.

It is well settled that under that statute and its predecessors the town could not be held liable unless upon the same facts the commissioners of highways would have been liable prior to the enactment of chapter 700 of the Laws of 1881; and consequently a town cannot now be held liable for such injuries unless upon the same facts the superintendent of highways, who is not an agent of the town, but an independent public officer with defined and limited powers, could have been held liable as successor to the commissioners of highways. The negligence of the superintendent is still the basis of liability, hence the inquiry in each case is in regard to his conduct and the manner in which he has performed his duties. A judgment cannot be obtained against the town unless the facts show that the superintendent was guilty of such negligence in the performance of his official duties as would render him liable to the town for the amount of a judgment recovered

against it. Negligence of the superintendent in the performance of his official duties may be defined as an omission on his part to use ordinary care under all circumstances in the performance of a duty imposed upon him by law, which omission was the proximate cause of the injuries complained of. (*Lynch* v. *Town of Rhinebeck*, 210 N. Y. 101; *Lane* v. *Town of Hancock*, 142 id. 510; *Clapper* v. *Town of Waterford*, 131 id. 382.)

It is necessary, therefore, to examine the statute in order to determine what are the duties of the town superintendent of highways. They are defined in section 47 of the Highway Law. Subdivision 1 thereof provides that he shall have the care and superintendence " of the highways and bridges and board walks, or renewals thereof on highways less than two rods in width." Subdivision 2 provides that he shall cause " such highways and bridges and the board walks or renewals thereof, on highways less than two rods in width to be kept in repair, and free from obstructions caused by snow; " he is further directed to inspect the highways and bridges within the town during the months of April and October of each year or at such other time as the county superintendent may prescribe; and the term " renewal " of a board walk is defined to include a walk built of other material to replace such board walk. By other subdivisions of that section he is required to remove obstructions caused by snow, to repair sluices and culverts, to cause loose stones in the beaten track of the highway to be removed, to cause weeds, briars and brush within the bounds of the highway to be removed, etc.

Section 52 of the Highway Law defines obstructions as including fallen trees, fallen limbs of trees, overhanging branches, etc., as well as " fences, buildings or other structures erected within the bounds of the highway." The duty is imposed upon the abutting owner to remove the same and provision is made that if he fails to remove such obstruction within five days after notice from the town superintendent, the latter may remove them and charge the expense thereof against the abutting owner as provided in section 55 of the Highway Law.

Sections 90 and 93 of the Highway Law, providing for moneys to be levied and collected by taxation for highway purposes, provide for the levy and collection thereof " for the repair and improvement of highways, including sluices, culverts and bridges having a span of less than five feet, and board walks or renewals thereof on highways less than two rods in width," and also for the repair and construction of bridges having a span of five feet or more, as well as " for the removal of obstructions caused by snow and for other miscellaneous purposes."

It will be seen, therefore, that these sections of the statute provide specifically for the duty of the superintendent as to highways and bridges and also as to board walks and renewals thereof. It may well be urged that, by reason of the language used in those statutes, the word "highway" would not include a sidewalk within the bounds of the highway, in view of the specific provisions as to the superintendent's duties with reference to board walks and renewals thereof. It is necessary to look further into the statute to ascertain his duties, if any, with respect to sidewalks.

The former Town Law,* in effect at the time of the accident alleged in the complaint, provided in sections 250 to 256, both inclusive, for the creation of sidewalk districts in towns and the construction and maintenance of sidewalks therein. After the creation by the town board of a sidewalk district upon petition of taxpayers within the proposed district, that statute provided that the town board may cause sidewalks to be built therein, partly at the expense of the district and partly at the expense of the abutting owners, the construction to be under the supervision of the superintendent of highways. Section 254 provided that all sidewalks constructed in the district should be done under the supervision of the superintendent of highways and that the town board should annually estimate the amount necessary to be raised each year by taxation " to remove snow, ice and other obstructions from the sidewalks in said district." Although these sections contain no specific provisions for maintenance and repair of the sidewalks in a sidewalk district, it would seem quite clear that, construction thereof being placed under the supervision of the town superintendent of highways, and removal of snow, ice and other obstructions therefrom being placed under the same supervision, it would necessarily follow that the duty to repair or to keep the sidewalks reasonably safe for travel would likewise rest upon him. The foregoing statutes relating to sidewalks and sidewalk districts are comparatively new, having been added to the former Town Law by chapter 183 of the Laws of 1910, and are similar in many respects to the provisions in the Village Law for the construction and maintenance of sidewalks upon the village streets within a village.

In addition to those statutes, however, there have long existed statutes relating to the construction of sidewalks in towns. They are at present contained in sections 61 and 62 of the Highway Law. Section 61 provides in substance that the town superintendent may by written order, approved by a majority of the town board, authorize abutting owners to construct sidewalks at

* Laws of 1909, chap. 63.— [REP.

their own expense along town highways; and section 62 provides that the superintendent with the town board's consent may maintain and repair existing sidewalks in the town at the expense of the town, and further provides that under certain conditions the board may direct the superintendent to construct a sidewalk at the expense of the town.

Unquestionably if the town superintendent with the consent of the town board assumed maintenance and repair of sidewalks under section 62, the town would be liable for his negligence in performing that duty. It likewise seems clear that if the town board directed the superintendent to construct a sidewalk under section 62 at town expense, the duty of maintenance and repair would likewise rest upon him with resultant liability on the part of the town for his negligence. It would seem that the same rule should apply to a sidewalk constructed by the abutting owner on written order of the superintendent with the approval of the town board. These sections of the Highway Law are outgrowths of former statutes. Thus, by chapter 61 of the Laws of 1860, abutting owners were authorized to construct sidewalks upon highways abutting upon their premises and the highway commissioners were authorized to expend part of the highway tax upon such sidewalks. Likewise, by chapter 93 of the Laws of 1863, abutting owners were similarly authorized to construct sidewalks on the highway in front of their premises. And by chapter 233 of the Laws of 1881 the commissioners of highways were authorized by written order to authorize abutting owners to construct such sidewalks. These statutes were continued in effect in the Highway Law of 1890, being chapter 568 of the Laws of 1890. Section 43 of the Highway Law of 1890 (Laws of 1890, chap. 568) was to the same effect as chapter 233 of the Laws of 1881. Section 45 was taken from chapter 305 of the Laws of 1880 and authorized the highway commissioners upon petition to expend a portion of highway moneys in the construction, repair and improvement of sidewalks.

Those statutes were under consideration in *Clapper* v. *Town of Waterford* (*supra*). In that case the plaintiff sought to recover damages from the town for injuries which she received caused by stepping into a hole in a plank sidewalk or crosswalk which had been built by the abutting property owners under the authority of the statutes above referred to. Admittedly the roadbed, that is, the part of a country roadway ordinarily required to be kept in safe condition for the traveling public, was in good order, and the court held that the defect in the plank walk was so slight that the commissioners of highways were not negligent in failing to discover it. Inferentially, however, it must be assumed that there

would have been liability upon the town because of the neglect of the commissioners of highways had the defect in question in the plank walk been such as to have necessarily been brought to the notice of the commissioners, either actually or constructively.

In *Schell* v. *Town of German Flatts* (123 App. Div. 197) the plaintiff, riding a bicycle, collided with a pedestrian and was thrown down an unguarded embankment with resultant injuries, for which he sued the town. The plaintiff was using a cinder path which, although within the bounds of the highway, was separated from the traveled part thereof by a small gutter. Although the cinder path was apparently constructed as a bicycle path, there was no proof of such compliance with the statute by the sidepath commissioners as to relieve the highway commissioners from the duty of caring for and protecting it. The court, therefore, held proper a charge as a matter of law that the path was within the jurisdiction and control of the highway commissioners and was not legally a sidepath or bicycle path under the special statutes, for the maintenance of which the highway commissioners were not responsible. The court further held that it was not error to charge that the plaintiff had a right to travel on the cinder path. The point was raised that the cinder path was in effect a sidewalk for pedestrians and that consequently the plaintiff could not recover because he was riding a bicycle upon it in violation of the statute.

It would seem clear from this decision that the commissioners of highways were under a duty to keep the cinder path in safe condition as well as the traveled part of the highway although the two were separated by a gutter; and it would likewise seem to follow logically from that decision that the commissioners were also under a duty to maintain the cinder path if it were used as a sidewalk for pedestrians. A highway is for the use not only of vehicles but of pedestrians. If no provision is made for the use of a highway by pedestrians other than the provision for the use thereof by vehicles, the duty of the commissioners would be to maintain it in a reasonably safe condition for both classes of travelers. If on the contrary, instead of requiring pedestrians to use the traveled portion of the highway, a separate walk or sidewalk within the limits of the highway is provided for their use, it would seem clearly to follow that a similar duty would rest upon the highway commissioners to keep such walk in a reasonably safe condition for pedestrian traffic. Although the actual decision involved another point, the same reasoning was applied in *People* v. *Meyer* (26 Misc. 117), holding that a sidewalk for the use of pedestrians is as much a part of the highway as the traveled portion for the use of vehicles, and is under the care, superintendence and regulation of the same authorities.

It is true, indeed, that if the commissioners of highways provide within the limits of the highway a proper space for travel, adequately and reasonably protected, they would not be negligent with resultant liability on their town where injuries were sustained by a traveler because he strayed from the adequately and suitable roadway prepared for travel. (*Flansburg* v. *Town of Elbridge*, 205 N. Y. 423; *Van Buren* v. *Town of Bethlehem*, 178 App. Div. 254.)

In the *Van Buren Case* (*supra*) the plaintiff, riding along a town highway on his bicycle, in order to avoid an approaching team, went off onto a footpath about three feet wide running very close to a bank, and which path had been more or less used by people traveling along the road. While walking along this path between his bicycle and the traveled part of the road the bank gave way and he received injuries for which he sued the town. The footpath was not made or maintained by the town for travel but from time to time some pedestrians had traveled over it and made more or less a path of it. Under such circumstances the court held that no negligence had been shown. It seems clearly to follow from that decision that, had the footpath been made or maintained by the town for travel for pedestrians, liability on the part of the town for negligence would have existed.

From the foregoing decisions and upon principle, it would appear that whether the town builds the sidewalk itself or permits it to be built by the abutting owner upon its streets, it becomes responsible for its condition and bound to keep it in order. Hence it would follow that where a sidewalk is built under the statutes by an abutting owner with the town's consent, although those statutes do not expressly require the town to maintain or repair it, it nevertheless follows that the duty to maintain and repair exists. Indeed it was so determined in *Birngruber* v. *Town of Eastchester* (54 App. Div. 80). In that case the plaintiff recovered damages against the town for injuries received from a fall on a sidewalk. The defendant claimed that there was no provision in the Town Law requiring it to maintain sidewalks and that, therefore, there could be no liability upon the town based upon the defective condition of a sidewalk. In that case, to be sure, the sidewalk was actually constructed by the defendant. The court pointed out that provisions for such sidewalks had long existed in the statutes, referring to sections 43 and 45 of the Highway Law of 1890, and said that it did not hesitate to hold, in the absence of authority, that where a town constructs a highway with a sidewalk, the duty to keep the sidewalk in proper repair for travel exists equally as well as the duty to keep the center of the street in proper order for travel. As was said in *Anderson* v. *Van Tassel* (53 N. Y. 631, at p. 632), the high-

way commissioners in the performance of their duty to keep the highways in repair " Have jurisdiction over every part of the highway to its entire width." Furthermore, where a highway has become such by user for public travel for many years and has been recognized and treated by the town as a highway, it becomes a highway for the purpose of making the town responsible to a traveler upon it for injuries sustained by him due to the negligence of the commissioners of highways in failing to keep it in proper repair. (*Ivory* v. *Town of Deerpark*, 116 N. Y. 476, at p. 482.)

To be sure, the court in the *Birngruber Case* (*supra*) referred to *Saulsbury* v. *Village of Ithaca* (94 N. Y. 27) as stating the controlling principle in such cases. In that case the plaintiff sued the village for injuries resulting from a defective sidewalk. It did not appear that the village had built the sidewalk but did appear that it had been in existence and in bad condition for a year. Judgment in favor of the plaintiff was reversed by the General Term upon the sole ground that the village had neither built the sidewalk nor ordered its construction. The Court of Appeals reversed, saying (at pp. 29, 30): " In this was error. By charter the defendant's trustees are made commissioners of highways, and among other things are empowered to construct, repair or discontinue its streets and sidewalks, ' and prevent the incumbering or obstructing the same in any manner.' (Laws of 1864, chap. 257; Laws of 1871, chap. 140; Laws of 1875, chap. 287.) The order appealed from assumes that if the building of the walk had been a corporate act the defendant would have been liable. That is well settled. (*Conrad* v. *Trustees of Village of Ithaca*, 16 N. Y. 158.) In such case it would be sufficient to show that the work was done by its authority. If the structure which caused the injury is erected on its land, or on premises which it controls, by permission of its officers, the same result must follow. An equal liability is incurred when by omission to repair or compel the removal of a walk constructed without their authority, but of the existence of which they have notice, a way dangerous for travel is allowed to stand within the limits of its streets. In such a case it is their duty to repair or remove it, and with money in hand or power to procure it, there is no ground for irresponsibility. One or the other of these things must be done. It is true that whether a municipal corporation shall build, or permit to be built, a sidewalk on any of its streets, is matter of discretion not to be regulated by the courts, yet when a sidewalk is built with or without its permission, it becomes responsible for its condition and bound so long as it exists to keep it in order. This duty is ministerial and not judicial. (*Hines* v. *City of Lockport*, 50 N. Y. 239; *Hyatt* v. *Village of Rondout*, 44 Barb. 395; 41 N. Y. 619; *Vogel*

v. *Mayor, etc.*, 92 id. 10; 44 Am. Rep. 349.) In this case, therefore, it can make no difference how the walk came into existence, if the corporation, with notice, permitted it to be used for public travel. By the act of the builder, and acceptance or acquiescence in the building of it on the part of the defendant's officers, they had control over it, and it became the property of the village as completely as if it had been put in position by the village itself. The principle upon which the above cases were decided uphold this proposition, and the case of *Requa* v. *City of Rochester* (45 N. Y. 129; 6 Am. Rep. 52), to the same effect, is so like the case before us as to make it decisive in favor of the appellant."

It is urged, however, that the duties and liabilities of cities and villages with respect to sidewalks differ from those of counties and towns. This is true at least to some extent. Cities and villages are true municipal corporations as distinguished from counties and towns which, although now made municipal corporations by statute, have long been held to be merely divisions of the State, organized for the convenient exercise of portions of the political power of the State. Cities and villages, as true municipal corporations, operate under charters by special legislation or by general law. Charters to cities and certain villages usually contain provisions which govern as to their duties and liabilities with respect to their streets and sidewalks. The Village Law governs in that respect as to villages created under that law. By section 141 thereof the streets of such a village are specifically placed under the exclusive control and supervision of the board of trustees of the village. That section does not use the word " sidewalks," but the street would necessarily include a sidewalk constructed within the limits of the street. Specific provisions as to construction and repair of sidewalks is contained, to be sure, in sections 161, 162 and 163 of the Village Law, and further provisions as to claims against a village for injuries caused by defective sidewalks is to be found in section 341-a of the Village Law.

It has been consistently held that, as to cities and villages, such municipal corporations are charged with the care, custody and control of the streets and highways within their limits and that the primary duty rests upon them to keep such streets and highways in repair, with the result that they are liable for damages, arising from a neglect to perform that duty, to persons lawfully using such streets and sidewalks. (*City of Rochester* v. *Campbell*, 123 N. Y. 405, and authorities therein cited; *Whittaker* v. *Village of Franklinville*, 265 id. 11.)

It will be noted, however, that in those cases, and particularly in *City of Rochester* v. *Campbell* (*supra*), the court apparently

assumed without question that the duty of the municipal corporation to keep its streets in repair applied unquestionably to sidewalks within the boundaries of those streets and it is likewise to be noted that the court in *Whittaker* v. *Village of Franklinville (supra)* carefully refrained from holding that the village would not have been liable had the negligent act occurred upon the street or sidewalk. In that case the plaintiff was sitting in an automobile on a street adjoining a small village park, wherein a Fourth of July celebration was being held. She was injured by being struck by a piece of cannon which burst when fired off in the park. After pointing out the duties of a municipal corporation with respect to the maintenance of its streets and sidewalks and the liability upon it for failing to perform that duty, it held that the village would be liable for any negligent condition of its street causing injury, but that it could not be held liable because it acquiesced passively in the use of the park for the purpose of shooting off fire works, holding that a marked distinction existed between its duty of keeping the street reasonably safe because of its condition, and its duty of keeping it reasonably safe because of failure to prevent conditions on adjoining property which might result in damage to persons using the street. The rule of non-liability there applied, therefore, would not exist had the injury to plaintiff resulted from a defective condition of the street itself.

However, the distinction between cities and villages on the one hand, and counties and towns on the other, with respect to liability is pointed out in the following cases: *Dorn* v. *Town of Oyster Bay* (84 Hun, 510; affd., 158 N. Y. 731); *Markey* v. *County of Queens* (154 id. 675); *Augustine* v. *Town of Brant* (249 id. 198).

It was pointed out in the *Dorn Case (supra)* that there is an obvious difference between the obligations of rural towns and those of true municipal corporations, such as cities and villages, in respect to the care of highways, the rule being more stringent as to the latter than the former; and that the fact that towns are now made municipal corporations by statute does not change the rule.

In the *Markey Case (supra)* the court went into the history of counties in this State and pointed out that they were created for the better and more convenient government of the State, as were towns; that the corporate powers of both were of defined and limited extent, and were concerned with governmental duties, among which was the conservation of highways, in which respect, however, they were merely political divisions, organized for the convenient exercise of portions of the political power of the State. The duty of caring for the highways was imposed upon officers of the town, in the performance of which they were performing a

governmental duty. Hence the court pointed out the distinction between counties and towns on the one hand and municipal corporations, such as cities, upon the other, and held that that distinction had not been abrogated by the enactment of statutes making counties and towns municipal corporations. The same principles were stated and approved in the *Augustine Case* (*supra*). In that case, however, it was also pointed out that the modern tendency is against the rule of non-liability, calling attention to the fact that liability for highway negligence has now been imposed by statute upon towns (See Highway Law, § 74), and likewise upon counties (County Law, § 6).

The tendency to the enlargement of municipal liability is, of course, well known. In view of that tendency I feel that no limited or strict construction should be placed upon the duties of a town superintendent of highways and thus relieve the town from liability for such superintendent's negligence in the performance of his duties. I am firmly of the opinion, therefore, that where a sidewalk has been constructed for the use of pedestrians upon a town highway, either by the town at its expense or by the abutting owner with the consent of the town or the town superintendent of highways, the duty of the latter to keep a town highway in repair extends to such a sidewalk and that the town should be liable for injuries resulting from the superintendent's negligence in performing that duty.

The question remains, however, as to the superintendent's duty and the town's liability where a sidewalk is constructed upon a town highway by the abutting owner without the consent of the town or its superintendent. Having in mind the recent tendency to enlargement of municipal liability and the duties of the town superintendent under the statute with respect to the removal of obstructions, it would seem to me that, in such a case a duty will arise in the town superintendent either to remove the sidewalk or to keep it in proper repair. I consider applicable to such a situation the reasoning in the cases above cited of *Birngruber* v. *Town of Eastchester* and *Saulsbury* v. *Village of Ithaca.* Although the latter case involved a village rather than a town, the principle there applied is equally applicable. If the sidewalk which causes the injury is erected within the limits of the town highway by permission of the town or its superintendent, liability of the town for negligence of the superintendent in its maintenance follows. Liability follows equally when by omission to repair or compel the removal of a sidewalk constructed without their consent, but of the existence of which they have notice, a walk dangerous for travel is allowed to stand within the limits of the town highway. In such

a case it would follow that a duty arises in the town superintendent of highways either to repair or to remove it, for whether it was built with or without their permission, once it has been built, is being used and they have notice of it, they become responsible for it.

As we have seen, the town superintendent under the statute is required to make at least semi-annual inspection of town highways. If the sidewalk in question was erected upon a town highway without the consent of the superintendent or the town board, it must necessarily follow that in the course of time they were bound to have notice of its existence. It thereupon became their duty either to cause it to be removed as an obstruction or to keep it in a safe condition for travel. So far as this principle of law is concerned there can and should be no distinction whether the municipal corporation be a town or whether it be a city or a village. The authorities in that respect as to villages, therefore, are here applicable. In addition to those above cited, it has been held that in a city or village, although the abutting owner cannot by constructing a sidewalk compel the municipality to accept it and keep it in repair, yet if he does so construct it, not only for his own benefit but also for that of the public, the municipality may by acquiescence in his act for a sufficient length of time, or by other acts show its acceptance of the sidewalk and thus become bound to keep it in repair and become liable to any one injured by its failure so to do. (See *Hiller* v. *Village of Sharon Springs*, 28 Hun, 344, and authorities there cited.) (See, also, *Higgins* v. *Glens Falls*, 57 id. 594; affd., 124 N. Y. 666.)

It follows, therefore, in the instant case that if it appears upon the trial that the sidewalk was constructed by the abutting owner without the consent of the town or its superintendent, the town may be absolved from liability if the injury caused by the sidewalk occurred before the town or its superintendent could be held to have had notice of its existence. At the same time it is equally true that the town may be held liable if the accident occurred after it or its superintendent knew of the existence of the sidewalk and of its condition, or should by the lapse of time have known of them, and nevertheless failed to take any action to cause the walk to be removed or repaired. Consequently the motions directed to the pleadings to dismiss the complaint as against the town and to strike out the town's affirmative defenses must be denied.

There remains the question of liability of the defendant abutting owner. If he constructed the sidewalk without the consent of the town authorities it follows that by his affirmative act he created an obstruction in the highway. It seems to me a matter of indifference whether the obstruction he thus placed in the high-

way was an obstruction immediately he placed it there or whether it became an obstruction by reason of its condition after he placed it there. In that respect the decision in *City of Rochester* v. *Campbell* (*supra*) seems determining (p. 411 *et seq.*). It was there said that if a municipal corporation is compelled to pay a judgment for damages recovered by a traveler for injury sustained from a defect in a highway, which defect was created by the willful act or negligence of the abutting owner, the municipality may maintain an action against such abutting owner for reimbursement, and the rule is the same when the municipality had paid an undoubted liability without action brought. In such cases recovery has been allowed where the wrongdoer is responsible generally to all who are injured by his act, and when a municipal corporation has been compelled to pay damages for a wrongful act perpetrated by such abutting owner, it may sue him for indemnity, being subrogated to the cause of action which the injured party originally had against him. The primary liability in such a case rested upon the abutting owner who created the dangerous condition through which the injury resulted.

As applied to the present case, therefore, if it appears by the proof that the sidewalk was constructed upon the highway by the abutting owner without the consent of the town authorities, and the injury to the plaintiff resulted from that act, liability would follow.

Upon this motion I cannot hold as a matter of law that the plaintiff was guilty of contributory negligence, consequently the motion of the defendant abutting owner to dismiss the complaint must also be denied.