LORRAINE RUPERT et al., Appellants, *v.* TOWN OF WEST SENECA, Respondent, et al., Defendants.

Argued May 25, 1944; decided October 12, 1944.

*Daniel J. O'Neil* for appellants. I. There is nothing in the Highway Law from 1913, the date the walk was established, to 1935, the time of the enactment of chapter 772 of the Laws of 1935 (Highway Law of 1909, § 74, Highway Law of 1936, § 215), that gives anyone outside the town or town highway superintendent, authority over the walk in question. II. If the decision of the Appellate Division and contention of respondent are correct, towns were entirely relieved of liability and this is beyond the power of a legislative body. No person or corporation can legislate themselves out of responsibility. The matter is still left for our courts. III. Section 215 of the Highway Law is not effective in this action. (*Anderson* v. *Van Tassel,* 53 N. Y. 631; *Saulsbury* v. *Village of Ithaca,* 94 N. Y. 27; *Nelson* v. *Village of Canisteo,* 100 N. Y. 89; *Bullock* v. *City of New York,* 99 N. Y. 655; *Seymour* v. *Vil. of Salamanca,* 137 N. Y. 364; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *McSherry* v. *Trustees, etc.,* 129 N. Y. 612; *Stern* v. *International R. Co.,* 220 N. Y. 284; *Kunz* v. *City of Troy,* 104 N. Y. 349; *Ivory* v. *Town of Deerpark,* 116 N. Y. 476; *Weed* v. *Village of Ballston Spa,* 76 N. Y. 329.) IV. As a matter of law appellants are entitled to a reversal of the judgment of the Appellate Division, and an affirmance of the judgment of the trial court. (*City of Rochester* v. *Campbell,* 123 N. Y. 405; *Pomfrey* v. *Village of Saratoga Springs,* 104 N. Y. 459; *Willis* v. *Parker,* 225 N. Y. 159; *Gaynor* v. *Town of Hempstead,* 153 Misc. 321; *Ivory* v. *Town of Deerpark,* 116 N. Y. 476.)

*Edward B. Horning* and *Fred R. Scharf* for respondent. I. Present legislation, which clearly relieves towns of liability in this type of case, is indicative of legislative intention in 1938. II. There was no proof of construction or maintenance of the sidewalk in question within the meaning of section 215 of the

Highway Law and the town is not therefore liable. (*People ex rel. Van Keuren* v. *Town Auditors,* 74 N. Y. 310; *People ex rel. Loomis* v. *Board Town Auditors,* 75 N. Y. 316; *Monk* v. *Town of New Utrecht,* 104 N. Y. 552; *Flynn et al.* v. *Hurd,* 118 N. Y. 19; *Holroyd* v. *Town of Indian-Lake,* 180 N. Y. 318; *Lorillard* against *The Town of Monroe,* 11 N. Y. 392; *Short* v. *Town of Orange,* 175 App. Div. 260.)

CONWAY, J. The question presented involves the liability of a town for injuries sustained by a pedestrian in falling upon a sidewalk therein. The sidewalk was constructed by the defendant The Union Free School District No. 3 of the Town of West Seneca, Erie County, New York (hereinafter referred to as School District) and later became in such a state that it was defective. As a result there occurred the accident with which we are here concerned. Upon trial before a court and jury the husband and wife plaintiffs had verdicts against the defendant Town of West Seneca, Erie County, New York (hereinafter referred to as Town) but the jury found in favor of the defendant School District. Town appealed but no appeal was taken by the plaintiffs from the judgment in favor of School District. The Appellate Division reversed the plaintiffs' judgment against Town and dismissed the complaint. Under those circumstances the only question presented is as to the liability of Town.

The accident occurred in August, 1938, on Bellwood Avenue in Town. Bellwood Avenue is a public highway fifty feet wide. Within those fifty feet there was constructed a sidewalk along the school district property. The vehicle-way, which was asphalted, was about twenty feet wide. Between it and the sidewalk was what might be termed a shoulder of dirt or gravel. Then came the sidewalk and then another strip of dirt or gravel between the sidewalk and the fence enclosing the school district premises. The sidewalk in question was constructed in 1913 pursuant to an agreement by which the School Board of School District No. 3 of the Town of West Seneca engaged one Fisher to do the work. The same sidewalk was there at the time of the accident. It had been repaired once in 1927 when an addition to the school was built. In transporting material the contractor had wrecked a portion of the sidewalk and had then repaired it without cost to the School District.

The question presented involves, therefore, the liability of a *town,* and not of an abutting owner in a town, for a defective *sidewalk.*

We shall assume for the purpose of our discussion that the entire fifty feet within the lines of Bellwood Avenue, including the land on which the sidewalk was constructed by School District, was a town highway and while without a sidewalk was under the control, superintendence and regulation of the town authorities and that the town was responsible for a defect therein. Logically one would say that the same situation continued as to a sidewalk constructed within those fifty feet even though constructed without the consent of the town. Historically and by legislative action such is not the case in a *town.*

In *Augustine* v. *Town of Brant,* 249 N. Y. 198, 204–5, we said: " Towns and counties have been held to be merely divisions of the State organized for the convenient exercise of portions of the political power of the State (*Lorillard* v. *Town of Monroe,* 11 N. Y. 392), and as such exempt from liability for the negligent exercise of such power. A distinction has been drawn for this reason between the liability of counties and towns and the liability of cities for highway negligence. * * * The distinction rests on the difference between the exercise by the town of political powers and the exercise by the city of powers assumed by or imposed upon it which are ' more immediately performed in the interest of the corporation itself.' (*Missano* v. *Mayor, etc.,* 160 N. Y. 123, 128.) "

The Town of West Seneca was formed in the year 1852 (L. 1852, chs. 98 and 412). Like all other towns it derived its existence and organization as well as its duties, obligations and power from the Legislature. (*Holroyd* v. *Town of Indian Lake,* 180 N. Y. 318, 322.)

The first statute imposing highway liability upon towns was enacted by Laws of 1881, chapter 700. (See Highway Law, § 215.) The Legislature therein referred to " defective highways or bridges " and " defective roads or bridges." Sidewalks were not mentioned. There followed a series of acts to which we may refer as town-liability statutes, to wit (L. 1890, ch. 568, § 16; L. 1908, ch. 330, § 74; L. 1909, ch. 30, § 74; L. 1913, ch. 389; L. 1918, ch. 161, § 2). None of those statutes mentioned sidewalks.

On October 25, 1934, the case of *Gaynor* v. *Town of Hempstead* (153 Misc. 321) was decided. In the opinion in that case the following language was used: "If the sidewalk which causes the injury is erected within the limits of the town highway by permission of the town or its superintendent, liability of the town for negligence of the superintendent in its maintenance follows. Liability follows equally when by omission to repair or compel the removal of a sidewalk constructed without their consent, but of the existence of which they have notice, a walk dangerous for travel is allowed to stand within the limits of the town highway. In such a case it would follow that a duty arises in the town superintendent of highways either to repair or to remove it, for whether it was built with or without their permission, once it has been built, is being used and they have notice of it, they become responsible for it.

"As we have seen, the town superintendent under the statute is required to make at least semi-annual inspection of town highways. If the sidewalk in question was erected upon a town highway without the consent of the superintendent or the town board, it must necessarily follow that in the course of time they were bound to have notice of its existence. It thereupon became their duty either to cause it to be removed as an obstruction or to keep it in a safe condition for travel. So far as this principle of law is concerned there can and should be no distinction whether the municipal corporation be a town or whether it be a city or a village.

\* \* \* \* \* \* \*

"It follows, therefore, in the instant case, that if it appears upon the trial that the sidewalk was constructed by the abutting owner without the consent of the town or its superintendent, the town may be absolved from liability if the injury caused by the sidewalk occurred before the town or its superintendent could be held to have had notice of its existence. At the same time it is equally true that the town may be held liable if the accident occurred after it or its superintendent knew of the existence of the sidewalk and of its condition, or should by the lapse of time have known of them, and nevertheless failed to take any action to cause the walk to be removed or repaired." (pp. 332-333.)

At that time, the following language, originally enacted in the statute of 1890, remained substàntially in the statute as subsequently amended: " Every town shall be liable for all damages to person or property, sustained by reason of *any defect* in its *highways* or bridges, existing because of the neglect of any commissioner of highways of such town."

At the following session of the Legislature, which convened less than three months thereafter, there was enacted Laws of 1935, chapter 772, which amended said section 74 of chapter 30 of the Laws of 1909 (the Highway Law) so as to provide so far as here applicable, the italicized portion being new: " § 74. LIABILITY OF TOWN FOR DEFECTIVE HIGHWAYS, *Bridges and Sidewalks.* Every town shall be liable for all damages to persons or property sustained by reason of any defect in its highways or bridges, existing because of the neglect of any town superintendent of such town *but it shall not be liable for damages to persons or property sustained by reason of any defect in its sidewalks unless such sidewalks are constructed or maintained by the town or the superintendent of highways of the town, pursuant to law* * * * ". That was reaffirmed and renumbered as section 215 of the Highway Law by Laws of 1936, chapter 63, and amended by Laws of 1936, chapter 266. The change by the latter statute was from the words " pursuant to law " to the words " pursuant to statute ". By the 1935 statute the holding in the *Gaynor* case was declared not to be the law in this State.

It is plaintiffs' contention that there was no statute which relieved Town from liability when the sidewalk was constructed in 1913 and that the statute of 1935 could not relieve it from such liability. We think that plaintiffs have misconstrued the liability imposed upon *towns.* Any such liability for defects in highways is a statutory one. (*People ex rel. Van Keuren* v. *Town Auditors,* 74 N. Y. 310; *People ex rel. Loomis* v. *Board Town Auditors,* 75 N. Y. 316; *Monk* v. *Town of New Utrecht,* 104 N. Y. 552; *Flynn et al.* v. *Hurd,* 118 N. Y. 19; *Bowman* v. *Town of Chenango,* 227 N. Y. 459.) In *People ex rel. Van Keuren* v. *Town Auditors* (*supra*), we said (p. 315): " Under our system, no corporate duty is imposed upon towns in respect to the care, superintendence, or regula-

tion of highways within their limits. Commissioners of highways, have by the statute, the care and superintendence of highways, (1 Rev. St., 501, § 1), and, in the administration of the highway system, they, and the overseers of highways in subordination to them, are independent public officers, exercising public powers, and charged with public duties specially prescribed by law. * * * They are responsible, in a civil action, for any injury resulting from their neglect to repair a highway * * * whereby an individual sustains damage * * *.''

Neither at common law nor by statute were towns under any legal liability to respond in damages until after the enact-ment of chapter 700 of the Laws of 1881. (*Monk* v. *Town of New Utrecht,* 104 N. Y. 552, 557, *supra.*) It was there provided: '' The several towns in this state shall be liable to any person suffering the same, for all damages to person or property by reason of defective highways or bridges in such town, in cases in which the commissioner or commissioners of highways of said towns are now by law liable therefor, instead of such commissioner or commissioners of highways.''

The mention of sidewalks in Laws of 1935, chapter 772, was not by any means an initial legislative reference. On the contrary, the Legislature had many times distinguished between highways and sidewalks in towns. When it intended to refer to a highway, it used that word. When it intended to refer to a board walk or its renewal in concrete or other material (Highway Law [L. 1909, ch. 30] § 47, subd. 2, § 62, now Highway Law [L. 1936, ch. 63] § 140, subd. 2, § 151) it used the word board walk. When it intended to define a board walk as a sidewalk (Highway Law [L. 1909, ch. 30] § 62, now Highway Law [L. 1936, ch. 63] § 151), it used both those words. The word highway was not used as *including* a sidewalk of whatever material constructed. Thus, section 61 of the former Highway Law (now Highway Law, § 150) provided that a town superintendent *might* authorize, under circumstances therein detailed, the owners of property adjoining the town highways '' at their own expense, to * * * locate and construct sidewalks along the highways, in conformity with the topography thereof

\* \* \* ''¹  Under section 62 of the former Highway Law (now Highway Law, § 151) a town superintendent *might* '' with the consent of the town board, maintain and repair existing sidewalks '' and he *might* also be directed by the town board by resolution upon the petition of not '' less than twenty-five taxpayers \* \* \* to construct a sidewalk along a described portion of any highway of the town, \* \* \*.''² Former Highway Law, section 47, subdivisions 1 and 2 (now Highway Law, § 140, subds. 1, 2), charged the town superintendent with the repair, '' the care and superintendence of the *highways* and bridges and *boardwalks or renewals* thereof on highways less than two rods in width \* \* \* '' (33 feet) with exceptions not here material.³  There is also a series of statutes⁴ in which provision was made, at a period when apparently there was popular demand for cement sidewalks, for petitions, public hearings, estimates, plans, contracts and *sidewalk taxes,* which may have been designed to induce or compel property owners in towns to build or finance their own *sidewalks.*⁵ Finally there is a recent amendment, not here applicable, found in Highway Law, section 140, subdivision 18, by which it is now provided that a town superintendent shall '' maintain *all sidewalks in the town constructed by the state* adjacent to state highways and *all sidewalks in the town constructed by the county* adjacent to county roads \* \* \*.''⁶  (See, also, L. 1936, ch. 35.)

As further indicating the clear legislative intent and trend, we point out that in 1941 and 1942, subsequent to the accident here, by Laws of 1941, chapter 677, section 1 (repealing Highway Law, § 215, and adding a new section with same number) and Laws of 1942, chapter 300 (amending said § 215 as added),

---

¹ The series of statutes distinguishing between highways and sidewalks in towns and resulting in Highway Law, section 150, began with Laws of 1860, ch. 61; see also, Laws of 1836, ch. 281.

² The series of statutes resulting in Highway Law, section 151, began with Laws of 1890, ch. 568, § 45.

³ The series of statutes resulting in Highway Law, section 140, subdivisions 1 and 2, began with Laws of 1890, ch. 568, §§ 4, 20.

⁴ This series began with Laws of 1910, ch. 183.

⁵ See Laws of 1910, ch. 183; Town Law, sections 200, 200-a, and Town Law, section 198, subdivision 5, repealed by Laws of 1935, ch. 915, § 4.

⁶ Laws of 1937, ch. 833, § 3; Laws of 1939, ch. 266, § 1; Laws of 1941, ch. 736.

one injured may not sue a town even if it be shown that the *sidewalk* upon which he fell were in front of a town building, such as a town hall, and, therefore, constructed and maintained by the town, unless the claimant can show that written notice of the defect was given to the designated town official a sufficient time prior to his fall.

We need not quote here Highway Law, section 215, in full, as so repealed or added. Suffice it to say that it is now divided into numbered parts and that there is disclosed a clear Legislative distinction between the measure and method of proof required to establish liability for injuries sustained by reason of defects in highways and those sustained by reason of defects in sidewalks of towns. In the first of the numbered subdivisions injuries to person or property sustained by reason of a defect in a *highway* are considered. Subdivision two deals with injuries sustained by reason of a defect in a *sidewalk*. Subdivision three provides for notice of claim and commencement of action in either case. We note, however, that as to *highways* the claimant may have the benefit of constructive notice of defect by the town. As to *sidewalks*, a claimant may not avail himself of constructive notice nor may he avail himself of actual notice of defect served on the specified officer prior to injuries sustained, except as to sidewalks constructed or maintained by the town or town superintendent of highways pursuant to statute.

Despite the 1935 amendment to Highway Law, section 74 *(supra),* the trial court denied Town's motions to dismiss the complaint at the end of the plaintiffs' case and at the end of the entire case, after reserving decision upon them until after the rendition of the jury's verdicts and followed the decision in the *Gaynor* case. The words of the charge to the jury were frequently the words of the *Gaynor* opinion. The trial court made clear its position by charging without exception by anyone that " the town of West Seneca did not construct or maintain this sidewalk ". It may or may not be that the logic and reasoning in the *Gaynor* case are more consonant with justice than the rule adopted by the Legislature. The plaintiffs, in their brief, phrase it well in pointing out that the statutory rule means that " any trap or dangerous condition could remain indefinitely, and in the event of an accident, the town could look up the record and if the walk had been constructed by a

property owner, they could point out this fact to the injured pedestrian and say, ' We did not construct and we do not maintain ' " or " ' You have no remedy, because twenty-seven years ago the school district constructed a walk.' " It would seem that that is what the residents of towns wish. The action of the Legislature following swift upon the *Gaynor* decision so indicates. It may be that for a town to maintain all sidewalks now or hereafter constructed by private persons within town limits and to respond in damages for injuries suffered by reason of defects therein would impose too serious a financial burden upon town residents. That is for the Legislature to determine and it has spoken. " The courts are without power to substitute something else." (*Thomann* v. *City of Rochester,* 256 N. Y. 165, 172.)

The rule seems to be to the contrary insofar as cities and villages are concerned. It has been stated that " A manifest difference in this respect, arising out of charter provisions, and the obvious requirements of the situation, exists between village and municipal corporations, and country towns, in respect to such obligations." (*Monk* v. *Town of New Utrecht,* 104 N. Y. 552, 557, *supra.*) Thus in *Saulsbury* v. *Village of Ithaca* (94 N. Y. 27, 30) it was said: " It is true that whether a municipal corporation shall build, or permit to be built, a sidewalk on any of its streets, is matter of discretion not to be regulated by the courts, yet when a sidewalk is built with or without its permission, it becomes responsible for its condition and bound so long as it exists to keep it in order."

Pursuant to statute (Town Law, § 2), towns are now municipal corporations. However, prior to the enactment of section 2 of chapter 569 of the Laws of 1890, *towns* were not called municipal corporations. The above cases *Monk* v. *Town of New Utrecht* (*supra*), and *Saulsbury* v. *Village of Ithaca* (*supra*) use the words " municipal corporation " as referring to a *city* or a *village*. The rule placing greater liability upon cities and villages than upon towns is also found in the following cases: *Bullock* v. *Mayor, etc., of City of New York* (99 N. Y. 654); *Nelson* v. *Village of Canisteo* (100 N. Y. 89–92); *City of Rochester* v. *Campbell et al.* (123 N. Y. 405); *Stern* v. *International Ry. Co.* (220 N. Y. 284).

The judgment should be affirmed, with costs.

RIPPEY, J. (dissenting). On August 16, 1938, Lorraine Rupert, who resided with her husband at 90 Bellwood Avenue in the Town of West Seneca, Erie County, was injured by a fall due to a defective sidewalk near the northwest corner of Bellwood Avenue and Seneca Street. She brought an action for her injuries and her husband sued to recover expenses in caring for his wife and for loss of services. After a jury trial and a verdict for plaintiffs, judgment was entered against the Town of West Seneca. On appeal, the Appellate Division stated in its order that the findings of fact had been examined and affirmed (Civ. Prac. Act., § 602) but reversed, by a divided court, the judgment on the law and dismissed the complaint " on the ground that section 215 of the Highway Law relieves the defendant Town of West Seneca from liability."

No motion was made by the defendant for a direction of verdict in its favor. There was ample evidence, as the Appellate Division unanimously affirmed, from which the jury were authorized to find that Lorraine Rupert was free from negligence contributing to her injuries and that the sole proximate cause of her accident was the defective condition of a sidewalk furnished for the use of pedestrians using the public highway and upon which she fell. In that view of the case, the verdict must be reinstated unless, under the facts and circumstances here existing, section 215 of the Highway Law bars recovery.

The Town of West Seneca is and has been since its organization a municipal corporation. Bellwood Avenue was a public highway fifty feet wide laid out and maintained by the Town of West Seneca prior to 1911. It extended from Graham Street on the north end to and across Seneca Street at the south. Prior to that year it was and continuously since has been located in a residential section, dwellings were erected on both sides of the street and it was generally used for both pedestrian and vehicular traffic. Sidewalks were constructed on both sides. The center of the street had a twenty-foot pavement for the use of vehicles which the town constructed and maintained.

During 1912 and 1913, Union School District No. 3 constructed the first section of a public school building on a lot which it owned on the northwest corner of Bellwood Avenue and Seneca Street, made an addition to the building in 1922, and a further addition in 1928. The lot on which the school was located

faced 195 feet on Bellwood Avenue and 111 feet on Seneca Street and was enclosed by an iron fence on the lot lines as laid out by the town. As part of the school building and improvement program, the school board entered into a written agreement on July 14, 1913, with one George F. Fischer, under the supervision of the board, to construct a new concrete sidewalk, four feet wide, within the highway and along the street sides of the school property at the expense of the School District. In 1927, a contractor, when delivering material for the school addition, wrecked a small portion of the sidewalk and repaired it at no expense to the School District. So far as appears, no other repairs were ever made to the walk. There was evidence that other improvements were made and maintained within the street limits by the town. It was on that walk that the accident occurred. The court charged that as matter of law sufficient time had elapsed after the construction of the sidewalk so that the town board was presumed to have notice of its existence.

At the time of the construction of the sidewalk, the town superintendent of highways was charged with the care and superintendence of town highways and with the duty to keep them in repair and free from obstructions and with inspection thereof during the months of April and October in each year and was authorized to employ persons with means to enable him to perform the duties thus imposed (L. 1909, ch. 30, § 47). Section 74 of the same act made the town liable for all damages to persons or property sustained by reason of any defect in its highways existing because of the neglect of the town superintendent in the performance of the duties imposed upon him. Similar powers and duties had long prior to that time been imposed upon the town officer in charge of the highways of the town for whose negligence in the performance of such duties the Legislature imposed liability on the town (*Snowden* v. *Town of Somerset,* 171 N. Y. 99) and it could not be relieved from such liability merely because some duty of repair might also be imposed upon abutting owners (*Ferguson* v. *Town of Lewisboro,* 213 N. Y. 141, 146). It is presumed that the town superintendent performed the duties imposed upon him by the Legislature and by the required inspection, if not otherwise, knew of the construction of the sidewalk by the school board and that

the town consented thereto. Not only was there nothing to indicate that the town had surrendered any jurisdiction, supervision or control over any part of the highway or over its entire width, but it had no power to do so as against the public who were authorized to use the highway. The Legislature since 1909 not only has not modified or curtailed the powers granted to and duties imposed upon town superintendents of highways with respect to the control, maintenance and supervision of town highways or the obligations of towns to respond in damages for negligent failure of the town superintendents to exercise those powers or perform those duties but has by specific acts continued them (Highway Law, §§ 140, 215; Town Law, § 32). The entire width of the street, including the part on which the sidewalk was located, was a public highway and under the control, superintendence and regulation of the same town authorities (Highway Law, § 215 (formerly § 74), § 140 (formerly § 47); 37 Cyc., p. 12, *et seq.;* 39 C. J. S., pp. 909–918; *People* v. *Meyer,* 26 Misc. 117; *Schell* v. *Town of German Flatts,* 123 App. Div. 197; *Anderson* v. *Van Tassel,* 53 N. Y. 631; see *People* v. *County of Westchester,* 282 N. Y. 224, 228) and was recognized and treated as such by the defendant Town.

By chapter 266 of the Laws of 1936, the Legislature added to section 215 of the Highway Law the words, "but it shall not be liable for damages to persons or property sustained by reason of any defect in its sidewalks unless such sidewalks are constructed or maintained by the town or the superintendent of highways of the town pursuant to statute, * * *." That addition to the statute furnishes no relief to defendant since the sidewalk on which the accident happened, on the record here, was presumably constructed with the consent of the town superintendent and necessarily, under legislative mandate, was maintained under his supervision, authority and control. Presumably, through long continued, public and notorious use and enjoyment of the sidewalk, the Town recognized it as a completed part of the public highway and accordingly must be deemed to have maintained it within the meaning of section 215 of the Highway Law. It was the duty of the town superintendent, for whose neglect in the performance thereof the town was still liable, to inspect the highway and to maintain it in a reasonably safe condition for the use of travelers who were

entitled to use it. Where a walk in a dangerously defective condition for the use of the public was allowed to stand within the limits of the highway, it was the duty of the town superintendent of highways either to repair or remove it. The town superintendent, after 1936, could not shake off the mandatory duties imposed by the Legislature merely by failure to perform them and the town could not thereby assert that it was within the protection of the exception contained in the 1936 amendment by the mere failure of the town superintendent to perform those duties imposed upon him long prior to and at the time of the accident. There is nothing in the amendment of 1936 to section 215 of the Highway Law that grants immunity to a town from liability for neglect of the town superintendent with reference to the duties imposed upon him as to control, supervision and maintenance of the town highway throughout its entire geographical limits as so defined. The court correctly charged the jury in accordance with the foregoing principles of law.

In the circumstances in the record of this case, for injuries sustained by a traveler through no fault of his own, the town is liable if the proximate cause of the injuries is the neglect of the town superintendent in failing to keep the highway in suitable condition and repair or in failing to require the removal or repair of the defective condition after adequate notice. (Highway Law, § 215 (formerly § 74); *Gaynor* v. *Town of Hempstead*, 153 Misc. 321; *Robinson* v. *Chamerlain*, 34 N. Y. 389; *Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Saulsbury* v. *Village of Ithaca*, 94 N. Y. 27; *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459; *Ivory* v. *Town of Deerpark*, 116 N. Y. 476; *Embler* v. *Town of Wallkill*, 132 N. Y. 222; *Bryant* v. *Town of Randolph*, 133 N. Y. 70; *Flansburg* v. *Town of Elbridge*, 205 N. Y. 423, 428).

The judgment appealed from should be reversed, with costs in this court and in the Appellate Division, and the judgment of the trial court reinstated.

LEHMAN, Ch. J., LEWIS, DESMOND and THACHER, JJ., concur with CONWAY, J.; RIPPEY, J., dissents in opinion in which LOUGHRAN, J., concurs.

Judgment affirmed.